MELISSA A. JOHN,
1115 Stillmeadow Lane
Menasha, WI 54952

       Plaintiff,

Vs.

Case No. 20 CV _____

KIMBERLY-CLARK CORPORATION,
Registered Agent:
CT Corporation System
301 S. Bedford Dr. Suite 1
Madison, WI 53703,

And

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
Registered Agent:
CT Corporation System
8020 Excelsior Drive Suite 200
Madison, WI 53717,

       Defendants.

## COMPLAINT

The Plaintiff, Melissa A. John, by her attorneys, Wanezek, Jaekels, Daul & Babcock, S.C., by Attorney David D. Daul, for her complaint against the above-named Defendants, hereby states as follows:

## PARTIES

1. Plaintiff is an adult resident of the State of Wisconsin and currently resides in 1115 Stillmeadow Lane, Menasha, Wisconsin 54952.

2. Prudential, Kimberly-Clark Corporation ("Kimberly Clark"), operates and is organized to operate in the State of Wisconsin with a registered agent for service of process at CT Corporation System, 301 S. Bedford Street, Suite 1, Madison, WI 53703.

3. Prudential, The Prudential Insurance Company of America ("Prudential"), on information and belief, is a corporation organized under the laws of the state of New Jersey, licensed to do business in Wisconsin, with a registered agent for service of process.

## JURISDICTION & VENUE

4. As described more fully below, this is an action by a participant in employee welfare Benefit plans governed by the ERISA to recover benefits due under the terms of the Plans pursuant to ERISA § 502 (a)(1)(B), (28 U.S.C. §1132(a)(1)(B)).

5. Jurisdiction over this action is conferred upon this court because the claims herein arise under ERISA.

6. Venue is proper in the Eastern District of Wisconsin pursuant to ERISA §502 (e)(2), 28 U.S.C. §1391 (b), 29 U.S.C. §1132(e)(2) and because a substantial part of the events and omissions giving rise to these claims occurred in this district and, because, in substantial part, the breaches asserted herein took place in this district.

7. Plaintiff has exhausted her administrative remedies as a condition precedent to filing this action.

## FACTS

8. During the course of the Plaintiff's employment with Kimberly-Clark Corporation (Kimberly-Clark), Plaintiff became eligible for certain employee benefits, including short-term disability insurance benefits ("STDI"), and long-term disability insurance ("LTDI") benefits provided by the STD Plan and the LTD Plan, respectively.

9. Plaintiff last worked for Kimberly-Clark on March 7, 2017. Prudential approved Plaintiff's STDI claim from March 11, 2017 until December 28, 2017. LTDI was approved on December 28, 2017. As of November 26, 2019, Prudential terminated Plaintiff's LTDI claim.

10. Had Plaintiff's claim for LTDI benefits continued, Plaintiff would have been eligible for 60% of her pre-disability monthly earnings. Plaintiff's maximum period of payment is through his normal retirement age under the Social Security Act, which would occur on 09/11/38 (67 years old).

11. Plaintiff was successfully employed as Machine Operator at Kimberly-Clark, working on a full-time basis until March 7, 2017, when she ceased working. Due to the severity of her symptoms, Plaintiff has not worked in any capacity whatsoever since March 7, 2017.

12. On March 8, 2018 Kimberly Clark terminated the Plaintiff's employment for her inability to physically perform her job.

13. The Plaintiff suffers from constant and severe headaches since the age of 42. The pain is located in the bi-temple, left or then right with left occipital pain. The quality of the headaches is stabbing or throbbing or pressure and the intensity of these headaches range up to 10/10. The duration and frequency is constant. The Plaintiff has associated photophobia, phonophobia, increased intensity with activity and nausea as a result of the headaches and in addition to that the Plaintiff suffers from the following;

**Plaintiff's Active Medical Problems List;**

| | |
|---|---|
| Depression with anxiety. | Chronic migraine. |
| Hip pain, bilateral. | Fibromyalgia. |
| Morbid obesity with BMI of 40.0-44.9, adult. | Cervicalgia. |
| Other tenosynovitis of hand and wrist. | Depression. |
| Other and unspecified disc disorder of lumbar region. | Fibromyalgia. |
| Displacement of lumbar intervertebral disc without myelopathy. | Lumbago. |
| Degeneration of lumbar or lumbosacral intervertebral disc. | Insomnia. |
| Thoracic or lumbosacral neuritis or radiculitis, unspecified. | Hepatitis |
| Nonallopathic lesion of lumbar region. | Hepatitis. |
| Depressive disorder nec 5/21/2004 | Anxiety. |
| Cervicogenic headache. | Kidney disease. |
| Herpes simplex, mucoculaneous. | Anxiety. |
| Infectious mononucleosis, complications of mono-hepatitis. | |
| Other specified viral warts, cold sores. | |
| Pyelonephritis, unspecified, hospitalization. | |

The Plaintiff actively medicates or has recently medicated for the preceding conditions with;

| | |
|---|---|
| Olanzapine 10mg. | Mirtazapine 30mg. |
| Mupirocin 2% ointment (Bactroban) | Multivitamin |
| Zinc Gluconate 50mg. | Celecoxib |
| Magnesium Oxide 400mg. | Turmeric 500mg. |
| Biotene Dry Mouth Dental Paste (Dentifrices). | Lidocaine 5% patch. |
| Pregablin 100mg (Lyrica) | Fluxetine. |
| Valacyclovir HCL 500mb (Valtrez) | Gabapentin |

| | |
|---|---|
| Alprazolam .25mg (Xanax) | Diazepam |
| Duloxetine HCL 30mg, Delayed Release (Cymbalta). | Lorazepam. |
| Phentermine HCL 37.5mg (Adidex-P). | Buproprion. |
| Vitamin D3 5000 Units (Cholecalciferol). | Nortriptyline. |
| Topiramate 100mg (Topamax). | Meclizine. |
| Lamotrigine ER 100mg (Lamictal) | Cymballa 30mg Cpep. |
| Tizanidine 2mg (Zanaflex). | Acetaminophen. |
| Terconazole 0.8% (Terazol). | Aspirin. |
| Sennosides 8.6mg (Senokot). | Cyclobenzaprine |
| Omeprazole, delayed-release 20mg (Prilosec) | Naproxen. |
| Magnesium Gluconate 500mg. | Hydrocodone. |
| Levonorgestrel-Ethinyl Estradiol 0.1mg-20mcg (Vienva). | Tramadol. |
| Diclofenac 1% skin gel (Voltaren) | Temazepam. |
| Naltrezone 25mg (Topamax). | Ibuprofen. |
| Miralax Oral Powder (Polyethylene Glycol 3350) 17g packet) | Prednisone. |
| dihydroergotamine- mesylate | Ketoralac |

The Plaintiff suffers from constant pain making work impossible.

14. The Plaintiff is disabled objectively and within the meaning of the involved policy of the Prudential Policy.

15. Plaintiff timely applied for and was approved both STDI and LTDI benefits. But later denied LTDI, despite the severity of her condition which was shown by the medical records and other evidence presented to be at a level of severity that precluded Plaintiff from performing the duties of her occupation, or in fact, any occupation.

16. Melissa's limitations are sufficient to prevent any sort of subsequent work in any capacity. For instance Prudential requested and was provided a "attending physician statement" though Dr. Carl and opined that Melissa was only "capable of sedentary work, four hours/day, allow to change, sit, to stand as needed." Further that she will require "rest breaks every 30-45 minutes."

17. There is no employment that can accommodate such limitations in an employee. Even sedentary positions such as, for instance, a parking lot attendant could not take a "rest break" every 30-45 minutes.

18. Ms. John completed a Prudential "headache log" upon the request of Prudential on March 10, 2018 were she reported "First, my headache <u>never</u> ends. I have had this for several years. I have headaches every day, <u>all</u> day. Filling out the log I am therefore entering a daily headache with special entries when headaches as especially severe." Ms. John indicated that her headaches were severe throughout the log requested by Prudential.

19. On April 6, 2018 Dr. Eric Gowing entered into his notes Melissa's current status of treatment wherein he indicated that:

> "Melissa returns today stating that she continues to struggle with chronic pain she no longer is working as of a month ago. She is currently looking for a position that is sedentary and allows her to shift positions with no significant lifting. She is looking around for a sit-down receptionist/desk job. Overall pain is still pretty high 8 out of 10 she did not complete the multidisciplinary program but did go to several visits and felt that she learned enough pain coping skills. She does have some difficulty dressing in the morning, getting out of bed, walking outdoor flat ground, washing entire body as well as bending over to pick up clothing from the floor. She is unable to maintain any exercise program due to low back pain. She does have a lot of trouble getting out of a chair and demonstrated that today. MD Haq 4.3. Rapid 3-20.3. She continues to struggle with symptoms of anxiety, depression, fatigue and does get short of breath with walking up steps and medium range distances. She has been working with Dr. Carl who has placed restrictions of more no more 4 hours working. She did

> have a sleep study which was a home study and showed mild obstructive sleep apnea but she did desaturate to 82% of concern though is she still waking up with a severe morning headache and has also been having a lot of daytime somnolence. She met with Dr. Jenkins and neurology who gave her a prescription of olanzapine at night which she found to be effective but did not want to take it every night."

20. Prudential was provided with a "residual functional capacity form" on August 2, 2018. There Dr. Eric Gowing opined that he expected the disability to last more than one year. He further opined that the disability/impairment prevents Ms. John from standing for eight hours and limits her to a maximum one hour for standing over the course of one working day. He further opines that she could not sit upright for six to eight hours. He indicated that the maximum that she is capable of sitting for is one hour and that she would require the ability to lay down on several times on any working shift for extended breaks. Mr. Gowing indicated that the most Melissa could do was to walk one half block without stopping and she suffers from constant severe exhaustion. Finally Dr. Gowing concluded that Ms. John <u>could not work under any circumstance even in a sedentary position</u>. He finally concluded that her disability is not likely to change.

21. On December 3, 2018, summarizing several years of treatment for headaches Dr. Brian Jenkins of DO, Neurology summarizes Melissa's care wherein he said;

> "Melissa Ann John is a 47 year old female presenting for a follow up and was last seen 10 September '18. Her headache frequency was constant and severe since age 42 then constant and severe then constant with a 50% decrease in severity with return after being overdue than constant with a 65% reduction in headache than constant with 75% reduction until being overdue for injections then constant with 75% reduction until recent return then constant with 75% with return for the past week then constant with a 75% reduction is severe and return to 8/10 for the past week then constant 5/10 with exacerbation 8 days per month then constant with 75% reduction prior to the past visit and is currently constant with 75% reduction.

> She has had a severe exacerbation for 2 weeks. She has been taking naltrexone only once per day. She has severe constipation.
>
> Please see updated plan for updated responses to treatment."

22. On March 20, 2019 Dr. Eric Gowing entered into his notes Melissa's current status of treatment wherein he indicated that:

> "Melissa returns today stating that she has been working on diet and has been walking on treadmill 3 minutes a day. She has lost about 25 pounds since last visit. She still struggles with severe pain which she rates 9 out of 10. Patient global assessment 9 out of 10. She struggles with very poor memory. She has had a lot of difficulty doing most activities of daily living including dressing, getting out of bed, walking outdoor flat ground and bending over to pick up clothing from the floor. MD Haq score 5. Rapid 3-18. Denies nausea, vomiting, mouth sores, bruising, cough. She has had some depression, anxiety, shortness breath, fatigue, constipation and diarrhea. She uses the of CPAP but takes it off in the middle of the night due to intolerability."

23. On June 14, 2019 Dr. Brian Jenkins, DO (Neurology) entered a comment into his notes that,

> "Melissa Ann John is a 47 year old female presenting for a follow up and was last seen 19 March '19. Her headache frequency was constant and severe since age 42 the constant and severe then constant with a 50% decrease in severity with return after being overdue the constant with a 65% reduction in headache then constant with 75% reduction until being overdue for injections then constant with 75% reduction until recent return then constant with a 75% with return for the past week then constant with a 75% reduction in severe and return to a 8/10 for the past week then constant 5/10 with an exacerbation 8 days per month then constant with 75% reduction then constant with 75% reduction then constant with 75% reduction in severity prior to the past visit and is currently constant with 75% reduction.
>
> She is one month overdue and has had an increase in severity 2/10 to 9/10.
>
> Please see updated plan for updated response to treatment trials."

24. On September 13, 2019 Kathleen Sayers MSW, LCSW, LMFT opined for the following problems with Ms. John;

> Major Depressive Disorder, Recurrent episode, Severe (DSM5 296.33) (ICD-296.33) (ICD10-F33.2)
> Uncomplicated bereavement (ICD-V62.82) (ICD10-Z63.4)
> Depressive Disorder Due to Another Medical Condition, With major depressive-like episode (DSM5 293.83) (ICD-293.83) (ICD10-F06.32)
> Generalized Anxiety Disorder (DSM5 300.02) (ICD-300.02) (ICD10-F41.1)
> PTSD (ICD-309.81) (ICD10-F43.10)
> OSA, adult (ICD-327.23) (ICD10-G47.33)
> Fibromyalgia (ICD-792.1) (ICD10-M79.7)
> Migraine headache (ICD-346.90) (ICD10-G43.909)

25. Ms. Sayers continued to opine that Melissa suffered from "severe insomnia, depression, anxiety, chronic pain from her fibromyalgia and migraines." Ms. Sayers went onto access to give Melissa John "psychiatric current problems; major depressive disorder recurrent episode severe (DSM5 296.33) ICD10-F33-2."

26. On September 12, 2019 Dr. Paul H. Sumnicht MD opined as to Melissa's "history of present illness" as follows;

> "This is a 47 years old female who presents with insomnia. She has a CPAP mask that gives her nasal sore so she cannot use it. The patient complains of insomnia, nightmares, leg movements, snoring, partner notes apnea and daytime somnolence. Associated symptoms include weight gain, headache and depression. Risk factors for insomnia include obesity and history of sleep apnea. Adverse behaviors that may contribute to insomnia include alcohol use."

27. Ms. John submitted to a vocational evaluation through Mr. John Woest, MS, CRC, LPC, Vocational Consultant as follows;

> "**V. Vocational Potential:**
>
> The primary factors considered here involves Ms. John's age, education, work history, training, and permanent psychological and physical restrictions.
>
> Regarding the latter, according to Dr. Carl, Ms. John can perform selective sedentary work, with the option to sit or stand. She also requires 10-minute breaks every two hours (a restriction that will typically not be accommodated by most employers).

> Psychologically, Ms. John is suffering from recurrent, severe chronic major depression. For this she is in active treatment and clearly vocationally handicapped by this condition.
>
> Her most compelling limits have been assigned by Dr. Jenkins. He concluded that Ms. John is incapable of performing even low stress occupations. Additionally, relative to attention and concentration, she will be off task for over 25% of her work shift.
>
> Additionally, Ms. John requires three unscheduled breaks lasting 30-minutes each. Finally, Ms. John is projected to miss multiple days from work monthly, unexcused, due to her treatment and symptoms.
>
> She is otherwise considered high school education and approaching older worker status. All her work experience had been with Kimberly Clark. Her last position there, as a safety specialist, was probably consistent with light, semi-skilled work. She lost her position due to her functional inability to work a 12-hour shift.
>
> Since the loss of her job, her migraines have become more severe, as did her lower back problems. In this regard, her permanent work restrictions, as outlined in this report, would have dislocated her form her safety specialist job, and in my view, any occupation.
>
> All of the above findings have been offered to a reasonable degree of vocational certainty. Please contact me at your convenience with questions. Otherwise, thank you for this kind referral."

28. Although the Plaintiff has met and continues to meet the foregoing definition of Disability, and would continue to meet that definition through the maximum duration of benefits (until the Plaintiff reaches Social Security normal retirement age), Prudential improperly asserted that the Plaintiff was not disabled as defined under the policy even though this rationale is entirely lacking in credible evidentiary support and based on demonstrably incorrect conclusions.

29. Plaintiff submitted pre-litigation appeals of the LTDI denial prior to commencing this suit pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1. Plaintiff submitted medical records and test reports and results, the findings of physicians and a Functional Vocational

Analysis finding her totally disabled and confirming her disability precludes her from working in <u>any</u> capacity.

30. Despite the submission of evidence that established Plaintiff's entitlement to LTDI benefits, Prudential denied Plaintiff's claim and his appeals.

31. Instead of requesting an examination, Prudential relied instead on biased doctors and other personnel who performed incorrect and insufficient file reviews and thus lacked the personal knowledge or observation necessary to formulate and present informed or accurate opinions. In fact when pressed on the credentials of their own examining personal Prudential, quite suspiciously, refused to produce the curriculum, qualifications, credential of their so-called "experts". Justifying this refusal to produce qualifications for their "experts" upon on which they relied on as simply "their policy".

32. The competence of Prudential's treatment of Ms. Johns claim is illustrated in a very clear way by referring to the "independent medical examination" Prudential sent Ms. John to. This physician claims to be an expert in and applies to his patients hypnosis, acupuncture, BRIDGE treatment, (wherein an opioid addicted patient is treated by giving electrical shocks to the ears), facial rejuvenation (electrical shocks to the patients face to cure signs of age), "Energy Light Rejuvenation" (colored light aimed at the patients face to reverse age) whole body vibration (patient stands on a platform and is vibrated mechanically to as a form of exercise.). All of the foregoing are completely discredited in the medical community and are "junk science" and yet Prudential relies on this "independent medical examiner" to base its decision to deny benefits and its ultimate denial.

33. All venues of administrative appeals have now been exhausted, and this matter is ripe for judicial review.

34. The evidence submitted to Prudential conclusively establishes Plaintiff's disability. Accordingly, Plaintiff is entitled to all LTDI benefits due since November 26, 2019, plus interest that has accrued thereon; and she is also entitled to a declaration of rights that her benefits remain payable thereafter so long as he continues to meet the Policy's terms and definitions.

35. Plaintiff timely appealed the Prudential's denial of Plaintiff's LTDI benefits claim.

36. Prudential failed to consider the issues raised in appeal, ignored clear medical evidence of Plaintiff's medical conditions and disability, based their own conclusions on what it can only be described as an absurd independent medical examination, refused to produce even the credentials of the persons upon who's opinion they claim, did not perform a "full and fair review" of Plaintiff's LTDI claim, and did not afford the Plaintiff a reasonable opportunity for a "full and fair review" of her LTDI claim.

37. Prudential failed to adequately explain why they rejected specific evidence in Plaintiff's file, relied on plainly incorrect conclusions, failed to engage in a meaningful dialogue with the Plaintiff, failed to adequately explain their reasons for denying Plaintiff benefits, and conducted a selective review of Plaintiff's medical records.

38. At all times material to this Complaint, Plaintiff has remained disabled as defined by the STDI Plan and LTDI Plan, and the STDI Plan and LTDI Plan have remained in full force and effect.

39. Prudential's' denial of Plaintiff's claim for LTDI benefits caused Plaintiff to suffer the loss of benefits and to incur expenses, loss of savings and exhaustion of investments and retirement accounts.

## CAUSE OF ACTION:

## WRONGFUL DENIAL OF BENEFITS IN VIOLATION OF SECTION 502(A)(1)(B) OF ERISA

40. The preceding paragraphs are reincorporated by reference as though set forth here in full.

41. At all times material to this suit, Plaintiff has been disabled, as that term is defined by the Plans.

42. Pursuant to the proper standard of review is de novo.

43. Prudential wrongfully denied the LTDI benefits due to Plaintiff as of November 26, 2019.

44. Alternatively, if the arbitrary and capricious standard of review applies, then Prudential arbitrarily and capriciously denied Plaintiff's benefits.

45. Prudential have interpreted and applied the terms and conditions of the Plans in a manner that is inconsistent with the plain language contained therein.

46. As both the payer of claims and the adjudicator of claim eligibility, Prudential has an inherent conflict of interest.

47. Prudential's denial of Plaintiff's LTDI benefits was unreasonable in the extreme.

48. For these and other reasons, Prudential acted in violation of § 502(a)(1)(B) of ERISA when it wrongfully denied Plaintiff's claim for LTDI benefits.

**WHEREFORE** the Plaintiff, Melissa John, demands judgment from Prudential for the following:

    A. Payment of all retroactive LTDI benefits owed to Plaintiff under the terms and conditions of the Plans;

B. Declaration of Plaintiff's continued eligibility for all LTDI benefits under the Plans;

C. Prejudgment interest;

D. Reasonable attorney's fees and costs related to the action; and such other and further relief that the Court deems just and equitable.

Dated: May 19th, 2020

> WANEZEK, JAEKELS, DAUL & BABCOCK, S.C.
> Attorneys for Plaintiff, Melissa A. John
>
> By: /s/ David D. Daul
> David D. Daul, State Bar No. 1047368
> Email: david@lawyersgreenbay.com
> 417 S. Adams Street
> Green Bay, WI 54301
> Telephone: 920-437-8191
> Facsimile: 920-437-8101
> Attorney for Plaintiff Melissa A. John